# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 13-1312

September Term, 2014
FILED ON:   JULY 7, 2015

STATE OF NORTH CAROLINA,
                PETITIONER

v.

ENVIRONMENTAL PROTECTION AGENCY,
                RESPONDENT

CLEAN AIR CAROLINA, ET AL.,
                INTERVENORS

Consolidated with 14-1186

On Petitions for Review of Final Agency Action of
the United States Environmental Protection Agency

Before: GRIFFITH and KAVANAUGH, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

## J U D G M E N T

These petitions for review were considered on the record from the Environmental Protection Agency and on the briefs of the parties and oral argument of counsel. The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* FED. R. APP. P. 36; D.C. CIR. R. 36(d). For the reasons stated below, it is

**ORDERED** and **ADJUDGED** that the petition in case No. 13-1312 be dismissed as untimely and that the petition in case No. 14-1186 be denied.

The Clean Air Act requires the Environmental Protection Agency (EPA) to establish national ambient air quality standards (NAAQS) for pollutants that contribute to air pollution or threaten public health. 42 U.S.C. §§ 7408-09. After EPA sets a NAAQS, each state must submit to the agency a state implementation plan (SIP) explaining how it will "implement[], maint[ain], and enforce[]" that NAAQS within its boundaries. *Id*. § 7410(a)(1). For areas in a state that attain a given NAAQS, the Act provides various SIP requirements that collectively act as a program for the prevention of significant deterioration of air quality in those areas. *See id*. §§ 7470-92.

2

For any NAAQS that EPA sets after August 7, 1977, the Act requires the agency to promulgate regulations that will prevent significant deterioration of air quality resulting from emissions of the pollutant relevant to that NAAQS. 42 U.S.C. § 7476(a). To further this undertaking, EPA must set "baseline concentration" levels of the relevant pollutant, which reflect a measurement of the concentration of that pollutant in the air in a specific area on a specific date. *Id*. §§ 7473, 7479(4). The gap between the baseline concentration level and the NAAQS is known as an "increment." Put more simply: After EPA issues a NAAQS, it measures the air quality in a given area (the baseline concentration level) and determines how much more pollution could exist in that area before running afoul of the NAAQS (the increment).

The Act also authorizes EPA "to substitute" an increment for particulate matter equal to or smaller than ten micrometers ($PM_{10}$) for the existing increments for particular matter (a broad class of pollutants) generally, which are set out in a different section of the Act. 42 U.S.C. § 7476(f). In other words, instead of setting a new baseline date and level and determining for the first time the increment for particulate matter smaller than ten micrometers, the Act authorizes EPA to apply the increment that the Act elsewhere sets forth for particulate matter generally. *See id*. § 7473(b).

EPA exercised its authority under 42 U.S.C. § 7476(a) and set a baseline concentration level and increment for fine particulate matter smaller than 2.5 micrometers in length ($PM_{2.5}$) in a 2010 rule (the Increment Rule). *See* 75 Fed. Reg. 64,864 (Oct. 20, 2010). Petitioner North Carolina challenges the Increment Rule, arguing that EPA cannot treat $PM_{2.5}$ as a new pollutant under section 7476(a). Instead, the State argues, EPA had to set the $PM_{2.5}$ increment using its authority under section 7476(f).

We dismiss this petition because it is untimely. Petitioners seeking to challenge a rule promulgated under the Clean Air Act must bring their challenge within sixty days of when the final rule first appears in the Federal Register. *See* 42 U.S.C. § 7607(b). North Carolina filed its petition for review of the 2010 Increment Rule on December 26, 2013—years after the deadline for petitions expired. North Carolina insists that its petition falls within the Act's exception for petitions "based solely on grounds arising after such sixtieth day" that allows a party to file a petition for review "within sixty days after such grounds arise." *Id*.

North Carolina contends that our January 4, 2013, decision in *NRDC v. EPA*, 706 F.3d 428, 435-37 (D.C. Cir. 2013), constituted after-arising grounds under section 7607(b). But North Carolina brought its petition more than ten months after we issued *NRDC*—well outside of the sixty-day window for petitions that the after-arising grounds exception provides. Even assuming, without deciding, that *NRDC* constituted after-arising grounds, North Carolina's petition is thus still untimely. *See* 42 U.S.C. § 7607(b); *see also Am. Rd. & Transp. Builders Ass'n v. EPA*, 588 F.3d 1109, 1113-14 (D.C. Cir. 2009) (holding that a petitioner invoking the after-arising grounds exception must bring its petition within sixty days of when its after-arising claim ripens).

The State explains that it did not bring its claim immediately after *NRDC* because an EPA director suggested that the agency was reviewing the impact that the decision would have on the Increment Rule, and the State understood that "revisions to the Increment Rule," which might have

3

obviated the need for its petition, "would take time." Pet'r's Br. 29. But the Clean Air Act does not toll filing deadlines for such niceties. The Increment Rule was in full effect and applicable to North Carolina when we handed down our decision in *NRDC*. *See, e.g.*, 75 Fed. Reg. at 64,898 (noting that the Increment Rule set "final PM$_{2.5}$ increments . . . for *all State* [prevention of significant deterioration] programs" (emphasis added)). The State thus had no more than sixty days from when we issued that decision on January 4, 2013, to avail itself of the after-arising grounds exception and file its petition. *See* 42 U.S.C. § 7607(b); *cf. Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967) (holding that a suit is ripe if the legal issue is fit for judicial resolution and the party challenging an administrative action has felt its effects in a "concrete way"), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Since the State failed to meet that deadline, we dismiss the petition as untimely.

North Carolina also asks us to review EPA's denial of the State's administrative petition for reconsideration of the Increment Rule. The Clean Air Act allows petitions for reconsideration "if the grounds for [the] objection arose after the period for public comment (but within the time specified for judicial review) . . . ." 42 U.S.C. § 7607(d)(7)(B). The State filed its petition for reconsideration of the Increment Rule with EPA on December 23, 2013, making the same arguments it has now presented to us. EPA denied that petition for reconsideration for several reasons, including that the State failed to file it within the sixty-day judicial review period following our decision in *NRDC*. *See* J.A. 181-82. For the same reasons that we found North Carolina's petition for review untimely, we hold that the agency did not abuse its discretion in determining that the petition for reconsideration was untimely. *See AT&T v. FCC*, 363 F.3d 504, 509 (D.C. Cir. 2004). ("[A] court will reverse an agency's denial of reconsideration only in the most extraordinary circumstances . . . and only if the agency has engaged in the clearest abuse of discretion." (internal quotations and citation omitted)). We therefore deny the State's petition for review of EPA's decision rejecting the petition for reconsideration.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41.

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:    /s/
Ken Meadows
Deputy Clerk